UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUDY UNGAR,                                           Case No. 1:14-cv-539

       Plaintiff,                                      Dlott, J.
                                                       Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Judy Ungar filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On July 11, 2011, Plaintiff filed an application for SSI, alleging disability as of June 2, 2001, due to a combination of mental and physical impairments. (Tr. 137, 169). After Plaintiff's claim was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing, at which Plaintiff was represented by counsel, was held on December 10, 2012. (Tr. 28-51). Plaintiff and an impartial vocational expert, William Cody, were present and

testified.  On January 18, 2013, the ALJ denied Plaintiff's application in a written decision.

At the time of the hearing, Plaintiff was 60 years old. She has a high school equivalent education and last worked in June 2011 as an assembly line worker. Plaintiff applied for disability benefits on July 11, 2011 alleging disability as of June 2, 2011 due to fibromyalgia, depression, anxiety, hypothyroidism, and a sleep disorder. Plaintiff is insured for SSD benefits through December 31, 2016.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia, mild cervical degenerative disc disease, chronic headaches, hypothyroidism, obstructive sleep apnea, an anxiety disorder, and depression. (Tr. 13).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform medium work with the following limitations:

> Frequent crouching, crawling, kneeling, stooping, balancing, and climbing ramps and stairs; no climbing of ladders, ropes or scaffolds; no work around hazards such as unprotected heights or dangerous machinery; limited to performing unskilled, simple, repetitive tasks; occasional contact with co-workers and supervisors; no public contact; no jobs involving rapid production pace work or strict production quotas' limited to performing jobs in a relatively static work environment in which there is very little, if any change in the job duties or the work setting from one day to the next.

(Tr.16).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national

economy, including such jobs as cleaner, packer, and material handler. (Tr. 20). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) improperly evaluating Plaintiff's RFC for medium work; 2) failing to give appropriate weight to the opinions of the treating and examining physicians; and 3) failing to properly consider Plaintiff's sleep disorder. Upon close analysis, I conclude that none of the asserted errors requires reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence.**

1. *Relevant Evidence and the ALJ Decision[1]*

Plaintiff spent the last 25 years working as an electronic assembler. (Tr. 170). Plaintiff has a history of fibromyalgia, degenerative disc disease, chronic headaches, hypothyroidism and obstructive sleep apnea.

Plaintiff sought treatment at Tri-State Spinal Care in August 2010 and again in October 2010 alleging low back pain beginning in 1993. (Tr. 16, 234-235). She was diagnosed with lower back and neck pain, which were attributed to fibromyalgia and myofascial pain syndrome.

Plaintiff treated with Christopher Roberts, M.D., a general practitioner, from March 2011 through October 2012 for fibromyalgia, vertigo, migraine headaches, arthritis and tendonitis in her hands and wrists, hypothyroidism, neck pain, insomnia, depression, anxiety, abdominal pain, and high blood pressure. (Tr. 245-292, 355-375).

In May 2011, Dr. Roberts opined that Plaintiff would miss at least two days of work per month due to her impairments. (Tr. 255). In May 2011, Plaintiff also reported to Dr. Roberts that she was "concerned about losing her job due to these frequent

---

[1] Plaintiff's statement of errors focuses solely on the ALJ's evaluation of her physical impairments.

physician visits as well as time off work due to the flare" ups of her alleged fibromyalgia; Plaintiff reported she had around two doctors appointments every three months (Tr. 253). Dr. Roberts predicted she "would average 2 to 3 days of disability per month" based on "her past history." (Tr. 255).

On June 21, 2011, Dr. Roberts completed a Medical Leave Form for Plaintiff's employer, in which he opined that Plaintiff was unable to work due to transient ischemic attacks (TIAs), and that he expected her to have flare-ups of this condition 2-3 times per month. (Tr. 370-374). He opined that Plaintiff would have two medical appointments every three months. Dr. Roberts left the space provided to support his conclusions entirely blank. (Tr. 374)

A cervical spine MRI from June 13, 2011 revealed mild degenerative disc disease and bone spurs which caused at least a mild level of stenosis at multiple levels of Plaintiff's cervical spine. (Tr. 244). An MRI of Plaintiff's brain from the same date revealed evidence of a small infarct. (Tr. 243). Since her pain was throughout her body, Dr. Atluri treated Plaintiff for fibromyalgia and myofascial pain syndrome with Methadone and Flexeril. (Tr. 233-235).

In July 2011, Plaintiff noted that her last three headaches had all occurred after eating peanut butter. (Tr. 250). She reported that her fatigue and hair loss was improving. (Tr. 250). At her exam, she was well groomed, her neck was normal, and a neurological exam showed normal muscular tone, normal and symmetric motor strength throughout, and no sensory deficits in any extremities. (Tr. 251-252). Examination of her back showed "no spinous process tenderness," "some paraspinal muscle tenderness without spasm," "normal range of motion to flexion, extension, and rotation." (Tr. 252).

6

In August 2011, a polysoomnograph showed no clinically significant sleep disordered breathing, "no evidence of obstructive sleep apnea," but she did have unspecified hypersomnia with sleep apnea. (Tr. 13, 298-299, 308).

In September 2011, Dimitri Teague, M.D., conducted a review of Plaintiff's physical health records for the state agency (Tr. 54-56). He noted that Plaintiff's last physical exam was unremarkable, with normal muscle tone and strength, no sensory deficits, no spinous process tenderness, normal range of motion, normal single leg raise test, and normal gait. (Tr. 56). Based on this, he found that Plaintiff's physical limitations were not severe and no functional limitations were required. (Tr. 56).

In December 2011, William Bolz, M.D., conducted a review of Plaintiff's physical health records. (Tr. 64 ). He noted an October 2011 office visit where Plaintiff had normal respiratory and heart exams, normal muscle strength, normal reflexes, and normal range of motion. (Tr. 64). Dr. Bolz agreed with Dr. Teague that Plaintiff's physical limitations were not severe and no functional limitations were required. (Tr. 64).

In October 2012, just prior to her hearing before ALJ Kenyon, Plaintiff underwent physical and psychological consultative evaluations. ("CEs"). Notably, Phillip Swedberg, M.D., conducted the physical CE on October 30, 2012. (Tr. 332-345). Dr. Swedberg observed that Plaintiff had a normal physical examination but that she had a history of fibromyalgia. (Tr. 345). He opined that Plaintiff is limited to lifting and/or carrying up to 20 pounds frequently and up to 50 pounds occasionally; sitting up to 4 hours in an 8-hour workday; standing up to 3 hours in an 8-hour workday; walking up to 1 hour in an 8-hour workday; never climbing ladders, ropes, or scaffolds; only frequently climbing

7

ramps or stairs; and only occasionally balancing, stooping, kneeling, crouching, or crawling. (Tr. 337-340).

In light of the foregoing, at step two in the sequential evaluation process, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, mild cervical degenerative disc disease, chronic headaches, hypothyroidism, obstructive sleep apnea, an anxiety disorder, and depression. (Tr. 13). The ALJ determined that Plaintiff's physical and mental impairments did not meet or medically equal the level any listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ further determined that Plaintiff has the RFC to perform a limited range of medium work. In so concluding, the ALJ weighed the opinion evidence as follows:

> Significant but limited weight is given to the assessment of Dr. Swedberg. Great weight is given to his above-noted objective findings. Dr. Swedberg correctly concluded that the claimant remains capable of a "marked" level of exertional activity, which is consistent with finding that the claimant is capable of performing medium work. However, less weight is given to Dr. Swedberg's medical source statement. In this portion of his report, Dr. Swedberg concluded that the claimant can sit for four hours per day, stand and walk for one hour each at a time, walk for a total of one hour per day, and stand for a total of three hours per day. These limitations are based on an uncritical acceptance of the claimant's subjective allegations and are not supported by Dr. Swedberg's objective findings or the claimant's objective medical evidence of record. Dr. Swedberg's suggestion that claimant is limited to occasional postural movements is also not supported by the record.
>
> Little weight is given to the assessment of the DDS reviewing physicians, Drs. Teague and Bolz. They concluded that the claimant did not have any severe impairments. The undersigned finds that the claimant's musculoskeletal complaints are severe.
>
> Little weight is given to the assessment of Dr. Roberts. He opined that the claimant would miss two to three days per month due to fibromyalgia and related medical appointments. To the contrary, the level of pain the claimant experiences as a result of fibromyalgia has been of mild to moderate level severity. There is nothing in Dr. Roberts' progress notes

8

> which supports or justifies his opinion that the claimant would be absent from work for this amount of time.

(Tr. 19)(*internal citations omitted*).

2. *ALJ's RFC determination comports with Agency Regulations and Controlling Law*

Plaintiff asserts that the evidence of record does not establish that she is capable of performing medium work. As noted above, the ALJ held that Plaintiff has an RFC for medium work with frequent crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; no climbing of ladders, ropes or scaffold and no work around hazards. (Tr. 13). However, according to Plaintiff, no physician of record found Plaintiff capable of performing medium work. The CE examiner opined that Plaintiff was capable of light work and Plaintiff's treating physician, Dr. Roberts, opined that she would miss at least 2 days of work per month due to her impairments. (Tr. 255, 337-340, 370). As such, in reaching his RFC assessment, Plaintiff contends that that ALJ improperly acted as a medical expert. Plaintiff also contends that the ALJ erred in failing to give controlling weight to the findings of Dr. Roberts, Plaintiff's treating physician.

Notably, it is well established that an ALJ is not permitted to substitute his own medical judgment for that of a treating physician and may not make her own independent medical findings. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)(*citing Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) and *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). "'[A]n ALJ is not free to set his own expertise against that of a physician who presents competent evidence.'" *McCain v.*

*Director, Office of Workers Compensation Programs*, 58 F. App'x 184, 193 (6th Cir. 2003) (*citing Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)).

Here, the ALJ properly evaluated the evidence of record in determining that Plaintiff was capable of performing medium work. With respect to Dr. Swedberg's findings, In October 2012, Dr. Swedberg noted that Plaintiff walked with a normal gait and without the use of ambulatory aids, and that she could sit and lie down comfortably (Tr. 343). Dr. Swedberg wrote that Plaintiff had "a completely normal, age appropriate examination." (Tr. 344). Dr. Sweberg's examination of Plaintiff showed no muscle atrophy, no muscle spasm, full muscle strength, full sensation, and normal range of motion throughout her body. (Tr. 332-336). Dr. Swedberg found that Plaintiff was capable of lifting, carrying, pushing and pulling no more than 50 pounds occasionally and 20 pounds frequently. (Tr. 337). As noted by the Commissioner, Dr. Swedberg also opined that Plaintiff could never climb ladders, ropes, and scaffolds; could frequently climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 340). The ALJ properly adopted these postural limitations into Plaintiff's RFC finding as well because they were consistent with the evidence as a whole. (Tr. 16).

Next, the ALJ gave "limited" weight to Dr. Swedberg's opinion that Plaintiff was limited to standing about three hours and walking about one hour in an eight hour workday; and sitting about four hours in an eight hour workday (Tr. 337-338). The ALJ noted that this limitation also is internally inconsistent with Dr. Swedberg's opinion that Plaintiff "appears capable of performing a marked amount of sitting, ambulating, [and] standing…" (Tr. 19) *See Goodman v. Astrue*, No. 3:11cv00012, 2012 WL 293152, at

*10 (S.D. Ohio Feb. 1, 2012) (Ovington, MJ) (internal inconsistency is "a basis for which it is acceptable to disregard the opinion of a treating doctor").

Plaintiff, however, challenges this finding, asserting that Dr. Swedberg's findings were not inconsistent. In this regard, Plaintiff agrees that Dr. Swedberg stated that Plaintiff was capable of a "marked" amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects and that the ALJ is of the *opinion* that "marked" is equivalent to medium work activity. However, according to Plaintiff, it is clear that this is an assumption, and that Dr. Swedberg is not of the same opinion, since Dr. Swedberg clearly marked Plaintiff's restrictions on the medical source statement, limiting Plaintiff to less than a range of medium exertion. (Tr. 337-340).

Contrary to this assertion, the ALJ correctly determined that Dr. Swedberg's sitting/standing/walking limitations were not supported by Dr. Swedberg's exam findings nor the evidence of record. As noted by the ALJ, Dr. Swedberg found that Plaintiff was comfortable sitting, walked with a normal gait, and had no muscle atrophy, no muscle spasm, full muscle strength, full sensation, and normal range of motion (Tr. 332-336, 343). *See Crouch v. Sec'y of HHS*, 909 F.2d 852, 856-57 (6th Cir. 1990) (We find that the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion [that Plaintiff was not disabled] . . . .").

In light of the foregoing, the undersigned finds that the ALJ properly evaluated Dr. Swedberg's findings and properly determined that Plaintiff is capable of performing a range of medium work.[2]

---

[2], Plaintiff also argues that the ALJ erred in finding that Dr. Swedberg relied on an "uncritical acceptance of the Plaintiff's subjective allegations." In this regard, Plaintiff contends that nowhere in his report does Dr. Swedberg state that he relied on Plaintiff's subjective reports in determining her RFC, nor does the

Plaintiff argues next that the ALJ erred in finding that Dr. Roberts assessment that Plaintiff would miss two or three days of work per month was deserving of "little weight." (Tr. 19, 370-374). According to SSR96-8 p, an RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis. See SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; See also *Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999)(defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The VE testified that a person who misses this much work per month could not sustain competitive employment. (Tr. 51).

However, the ALJ gave little weight to Dr. Roberts' assessment because the ALJ believed that Plaintiff's fibromyalgia pain was only "mild to moderate level severity." (Tr. 19). However, according to Plaintiff, in determining that Plaintiff would miss 2-3 days per month of work, Dr. Roberts considered all of Plaintiff's impairments, not just fibromyalgia. As her primary care physician, Dr. Roberts treated Plaintiff for a number of impairments, including fibromyalgia, neck pain, hypothyroidism, sleep disorder, depression, anxiety, and TIA. (Tr. 245-292, 355-375). Plaintiff asserts that the combination of these impairments and related symptoms would result in Plaintiff being absent from work at the frequency opined by Dr. Roberts. Notably, in a later report to Plaintiff's employer, Dr. Roberts specified that it was Plaintiff's TIAs which would cause her absenteeism. (Tr. 370).

---

Plaintiff state what she believes her limitations are. (Tr. 332-345). Contrary to this assertion, Dr. Swedberg's narrative assessment does indicate that he considered Plaintiff's reports of pain. (Tr. 343). In any event, as detailed above, the ALJ's analysis of Dr. Swedberg's findings are supported by the record.

However, as the ALJ explained, "there is nothing in Dr. Roberts' progress notes which supports or justifies his opinion that the claimant would be absent from work for this amount of time." (Tr. 19). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) ("[A]ny claim by Dr. Austin that Walters suffered from impairments of disabling severity would not be supported by detailed, clinical, diagnostic evidence in his reports."). As noted by the Commissioner, Dr. Roberts did not provide any explanation for why Plaintiff would be absent from work so often. *Ilesamni-Woods v. Astrue,* No. 3:09-CV-0479, 2010 WL 5490998, at *8 (S.D. Ohio Nov. 29, 2010) (Ovington, MJ) (ALJ properly rejected treating physician's opinion where doctor "did not explain his disability conclusions in any meaningful detail"). Moreover, Dr. Roberts treatment notes indicate that "the level of pain the claimant experienced as a result of fibromyalgia has been of mild to moderate level severity." (Tr. 19). Plaintiff reported that her back pain was at level 2 of 10 with medication; her neck pain level was 3 out of 10. (Tr. 16, 234-235). These complaints of pain are not consistent with a disabling condition or one that would require such frequent absences. *See Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) ("[Plaintiff's] own estimate is that his pain reaches a level of 3 on a scale of 0 to 10, and this does not sound disabling"). Thus, the ALJ's decision clearly indicates that he considered all of Plaintiff's impairments, not just fibromyalgia, in determining that Dr. Roberts' opinion that Plaintiff would miss 2-3 days should be given little weight. [3]

---

[3] The Commissioner also argues that Dr. Roberts's based the alleged need for work absences on Plaintiff's subjective complaints of fibromyalgia flare-ups but he never properly diagnosed her with this disease. (Tr. 373). Agency regulations state that fibromyalgia is not properly diagnosed unless 11 of 18 trigger points are positive. *See* Social Security Ruling (SSR) 12-2p, Evaluation of Fibromyalgia (stating the very specific criteria for an acceptable diagnosis of fibromyalgia, including "[a]t least 11 positive tender points on physical examination") Dr. Roberts never performed this test nor did any other doctor of record. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001) ("Dr. Haun . . . does not provide any objective basis for his conclusions."). This argument lacks merit because the ALJ found Plaintiff's

Last, Plaintiff contends that the ALJ erred by failing to properly consider the effects of Plaintiff's sleep disorder. In June 2011, Plaintiff was referred to the Sleep Management Institute. She reported difficulty sleeping and daytime tiredness. She was diagnosed with hypersomnia with sleep apnea, although a polysomnogram showed no evidence of obstructive sleep apnea. (Tr. 308). Plaintiff tried various medications, including Clonazepam, Doxepin, and Seroquel. She reported difficulty functioning at work due to daytime tiredness. (Tr. 301).

However, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). Here, the ALJ properly found that one of Plaintiff's severe impairments was "obstructive sleep apnea." (Tr. 13, 16). He described that she had "mild sleep apnea," and that the Sleep Management Institute "diagnosed [her] with hypersomnia with sleep apnea- unspecified." (Tr. 13, 298-299). The ALJ noted that this testing "revealed no clinically significant sleep disordered breathing." (Tr. 17). The ALJ noted that while Plaintiff "testified that she lies down several times during the day and rests during activities. . . . [she was still able to] engage in a variety of daily activities, including grocery shopping, cooking, and chores such as laundry." (Tr. 14). The ALJ also noted that Plaintiff sewed as a hobby, took her dog out for exercise, had a driver's license, was able to drive, and could attend to her grooming and hygiene. (Tr. 14, 328).

At follow-up visits in 2011, she was prescribed Clonzepam for insomnia with

---

fibromyalgia to be a severe impairment. The issue is not whether Plaintiff has been properly diagnosed with fibromyalgia, but instead, whether Plaintiff's fibromyalgia would result in significant functional limitations, such as necessitating that she miss 2-3 days of work per month. As detailed above, the record does not support such a finding.

frequent nocturnal awakenings. (Tr. 17, 300-317). The ALJ further noted that in 2012, Plaintiff's daytime sleepiness, fatigue, and insomnia were noted as better, and that Seroquel was working well and allowing her to sleep restfully through the night. (Tr. 17, 351). Additionally, as noted by the Commissioner, none of Plaintiff's physicians ever told her that her sleep disorder caused any restrictions. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("The physicians who treated Ealy for these things never recommended any ongoing significant restrictions."). The treatment and examination notes of Plaintiff's doctors that made fleeting references to her insomnia, apnea, or tiredness do not constitute medical opinions. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009) ("Dr. McCord's responses . . . address the general relationship between Allen's spinal condition and the symptoms/limitations it may cause, rather than addressing the specific extent of Allen's limitations. . . . [These] responses appear to be outside the scope of 'medical opinions' as defined in 20 C.F.R. § 404.1527(a)(2)."). In light of the foregoing, the undersigned finds that the ALJ properly evaluated Plaintiff's sleep disorder and that his decision is substantially supported in this regard.

Where, as here, there is a conflict in the medical evidence as to plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir.1987); *King v. Heckler,* 742 F.2d 968, 974 (6th Cir.1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983). *See also Boyle v. Sullivan,* 998 F.2d 342, 347 (6th

Cir.1993); *Tyra v. Secretary of H.H.S.,* 896 F.2d 1024, 1028 (6th Cir.1990). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform work related activities. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff's SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) As no further matters remain pending for the Court's review, this case be **CLOSED.**

                           */s Stephanie K. Bowman*
                           Stephanie K. Bowman
                           United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUDY UNGAR,                                         Case No. 1:14-cv-539

    Plaintiff,                                Dlott, J.
                                                    Bowman, M.J.
  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

17